et al. Oral argument not to exceed 15 minutes to decide. Ms. Williams for the defendant's defense. Good morning, Your Honor. I've reserved five minutes of rebuttal time. Your Honor, my name is Robin Williams and I'm from the Nashville Bar and today I represent Defendant Melton, Defendant Harvey, and Defendant Phillips in a deliberate indifference case, Your Honor. The defendants contend that the lower court erred in failing to grant summary judgment based on qualified immunity. And the lower court basically didn't look at the facts. They summarized, the magistrate judge summarized some facts that he believed were relevant to the determination of qualified immunity or more particularly whether a constitutional violation could have occurred. But those were all things that were not in the record. So the judge was really asking for information that was just absent from the record. And when Judge Sharp... Can I say this is a procedural thing that puzzled me a little bit. I'm aware of qualified immunity and interlocutory appeals and all that. What I've not seen in 15 years as a judge is the district court handling them at different times. So if I'm understanding this case correctly, nurses have also been sued, right? Yes, Your Honor. Do you represent the nurses? I do not. Okay. So that's represented separately by someone else. But why would you separate out... Why wouldn't you deal with all the defendants at once and to the extent any of them are authorized interlocutory appeals, that would happen at once. And this case looks like it's going. There's an interlocutory appeal for some and then the nurses are going to be resolved and potentially be... Well, they'll be back here one way or the other, right? Because they lose, they file an appeal, they win, the plaintiffs file an appeal. And they're separated from this case. I just don't understand how that happened. Well, potentially. I mean, the problem is that we're under deadlines for a trial. And in this situation, when we felt like we had a right to the qualified immunity argument, we felt we needed to take that argument up. This trial date? I don't remember the trial date, Your Honor. I don't know that we actually had one or not, now that I'm talking about it. But I think we did have a trial date. And so there was a concern because, as you know, the middle district in Tennessee is extremely strapped with regard to the judges. So we didn't know when we might get another decision. In fact, there was just an order... Well, I just haven't seen it before. It's really... It's not your fault. I just can't... It's just very strange. So the nurses didn't move for... The nurse did move for summary judgment. And that was still outstanding and pending. The court did ask for further information from those individuals. They've supplied that. In fact, there's been a new order just this week, or late last week, that asked for more information on that. So the court, I think, is about to start to think about ruling on that motion for summary judgment. Well, they're not going to do a thing. They're going to say, let's see what the Sixth Circuit does. Potentially, Your Honor. Which is why I don't get this. I mean, the issues are different. I mean, with regard to my clients, the actual... The fact that the magistrate judge pointed to all of these facts that actually amounted to more of a negligence claim, and said that because there wasn't this information in the record, we can't decide. Well, if that information's not in the record, it's not in the record. I mean, it's not part of the record. And it's a deficiency that the plaintiff has created that would entitle my clients to summary judgment. So in this case, I mean, when you look at the facts that are in the record, we believe that my client is entitled to qualified immunity. When you look at the objective or the subjective components of deliberate indifference, particularly when you look at the subjective component of deliberate indifference, with regard to Sheriff Melton, there's only two particular instances that can potentially even create liability for him. There's an alleged conversation between the plaintiff's family member and the sheriff. The complaint only says that they made an attempt to contact the sheriff, and he said that he could not speak to them about an inmate's health concerns. Is that true? You're not allowed to talk to family members about an inmate's health concerns? I don't know that that's true or not. With regard to whether there's any HIPAA violation, he's made it a practice, apparently, to not have those conversations with family members, but allow them to... Why couldn't that be deliberate indifference? I mean, you know, hypothetically, someone needs epilepsy medication. They're not getting it for 30 days. Family members are calling. He says, I don't talk to family members. At the same time, he's not giving the inmate what he needs. Why isn't that deliberate indifference? It would not be deliberate indifference, Your Honor, respectfully, because at that point, for deliberate indifference, the sheriff would have to have sufficient information to realize that there's an inmate who's at a serious risk of harm. In this case, there was no risk. But you would have... I think we're all on the same page. If you deny someone their epilepsy medication and they have epilepsy, that's a problem. We would all agree with that. That has to be true. In this case, Your Honor, Mr. Newberry was not denied his epilepsy medication. But he didn't have it for 30 days. Well, he does allege that. If you look at the medical records, January 26, three days after he came into the facility, he was being given his anti-seizure medication. But he does make that allegation very generally in the complaint that he was denied seizure medication for 30 days. There's not any indication that he suffered any harm if that were the case. But I think when you look in more detail at the records, he was being provided that medication. Don't you have to accept that as being true, though, for purposes of being able to have an interlocutory appeal? Yes, Your Honor. But there's no evidence that there would have been any harm to him within those 30 days. He was provided the medication. I think we're talking about two very distinct issues. Whether or not they denied the medication could potentially be, that goes to the objective component of deliberate indifference and whether he can establish that he had a serious medical condition that required attention. He got that attention. He got that medication. With regard to the seizures themselves, we know he's had seizures since he was a child. He'll continue to have seizures, and he's had seizures since he left our facility. So we know he's going to have seizures. The seizures themselves are not an injury or the harm. The question would be, for each particular seizure that he had... Then why don't we talk about the Phillips thing, and that one seizure where he busts his eye. Phillips is involved in that. We can't deny that. We can't deny an injury, which is not de minimis. There's no way you could say that's de minimis. And what's your reaction to the method of bringing him on the mat, leaving him sufficiently alone that he hurts himself? So why isn't that deliberate indifference? Well, that wouldn't be deliberate indifference, Your Honor, because he wasn't housed in a condition that posed an excessive risk of harm to him. He's not entitled as an inmate to any extra security or protections than he would have in the normal world. He's testified that he had seizures. Usually he knows they're coming on, but occasionally... I'm talking about this one incident. With regard to this one incident, there's no evidence that Sergeant Phillips was present when he had the seizure. He was called to the incident after the seizure occurred on January 9th. He saw that he had hit his eye. There's testimony from... I thought he hit his eye after he'd been moved from the general to the observation cell. No, Your Honor. And there is a little bit of a dispute with regard to that. The testimony of the inmate who was in the cell with him says that he saw the bump. If you look at the medical records, when Phillips called the nurse, he immediately reported that he called it a pump knot on the eye. And so that was clearly visible, and that was the injury that he sustained before Phillips ever arrived. But if you take the plaintiff's word, the plaintiff has very generally just said, oh, well, I sustained an additional injury once I was in this cell, which it's not the case. But if we take that as true... Let's accept that as true now. What's the answer? If we take that as true, Sergeant Phillips still acted appropriately and reasonably under the circumstances and would be entitled to qualified immunity. He called the nurse. He got him assistance. He started a med watch where they watched him every 10 to 15 minutes. He provided an extra mat. He did reasonable things to ensure that the inmate was safe and secure. If he sustained an additional injury while he was in there, that doesn't mean it's deliberate indifference. When do you contend he had the injury? He actually had... The whole reason that Sergeant Phillips was called was because he had a seizure in his cell with a cellmate, and he hit his right eye on a table in the cell. And that testimony is... That was before he was moved into the... The booking area. Moving cell or whatever. Yes, sir. You know, both sides, the inability to figure out what the facts of this case... You can blame both of you on this. It's just terrible. I apologize for that, then, Your Honor. No, it is. It's just difficult to figure out when, where, what. He supposedly hit his head on a drain. I have no idea what that drain looks like, what it is, what it's composed of. The whole thing is, where were you both when this... And I blame both sides on this. I don't... Well, I will certainly take responsibility for confusing the court and apologize for that. But the evidence, and I believe it... We have to read it their way. So when we're talking, let's just always talk in terms of reading it their way. They have to have something. It's summary judgment, but if they have something, read it their way. I agree, Your Honor. I mean, on this particular point, with an interim interlocutory appeal like we have, we have to do that. But even if he sustained an injury after he was in the cell, it wouldn't be deliberate indifference because the officer acted reasonably under the circumstances. It was objectively reasonable. Well, it all depends when Phillips left, right? I'm sorry? Well, he took him into the holding cell. If he had additional injury then, when did Phillips leave? Well, Your Honor, Phillips would have gotten off at 6 a.m. that morning. I mean, he was still there for several hours after the incident, but I don't know that that's in the record. But what's more important is that Phillips did order the COs who were on duty to perform a med watch, and they watched him. He put a mattress, an extra mattress down. Did he leave then? Was there a seizure after that? You know, somebody's got to play lawyer here. He was left in the cell, but a med watch was performed where the COs would check him every ten to fifteen minutes. So they're able to observe him in the booking area and ensure that he doesn't... Is there testimony he actually left the cell? That he actually left the cell? Well, the plaintiffs contend that. I mean, it's not disputed that they would have left the cell but continued a med watch. So there would have been a watch. I see my time is over, so... We'll get you a full rebuttal. We'll hear from Mr. Williams. No, it's Mr. Hinton. If it pleases the court, counsel, your honors, respectfully to each of you, and to address your point, your honor, this court does not have jurisdiction to hear this case on appeal at this time. The defendants are asking for a second bite at the apple they're not entitled to. The United States Supreme Court in Johnson v. Jones held this a holding. This is an indicia or something like that. Defendants entitled to invoke a qualified immunity defense may not appeal a district court summary judgment order insofar as that order determines whether or not the pre-trial record sets forth, quote-unquote, genuine issues of fact for trial. Counsel? Yes, sir. So we get that point. We're familiar, heard of the case. In answer to the questions we were just asking about, we're focused on the Phillips incident. And what I heard her to say is, you say one thing, their witnesses say another thing. But what I heard her to be doing was providing a qualified immunity answer to either one. So I thought that's what solves the Johnson v. Jones problem. As long as you're willing to address, deal with the facts, you tell us. Tell us what you want the facts to be on the Phillips banging the eye. Do you think he was injured in the cell or was he injured in the observation? You tell us what you want. What do your facts show us? What's the way to think about that? Where was the injury? Their facts say... No, I want to hear yours. You're the plaintiff. The way I understand this to be, Your Honor, is that he was injured. Where? He was injured in a different cell in Maximal, where he was located. In General? General. General. Okay. He was injured there during a seizure. Sergeant Phillips, Defendant Phillips, among others, was called. And he drug him on a mat into a cell. Exactly, to the observation cell. And where he was... Injured again. Face down in a drain. That's where he woke up. Okay. So we have to take it, and I heard her to be saying, we'll deal with the legal issues, whether that's deliberate indifference under that version. So we just established that in open court. So that's jurisdiction. I mean, that's the key point. This is a fact-based inquiry. That's the exact kind of thing the Supreme Court did not want these appellate courts to be deciding this to... We're not doing a fact-based inquiry. I just said, you tell us the facts, and we'll decide the case based on those facts. Okay. Tell them. You just said them, we'll resolve the appeal based on those facts. Okay. Well, that's the facts as I understood them, Your Honor. That's the facts that I understood... Why was it deliberate indifference? It was willfully inadequate. The response was willfully inadequate. And this court has said that... Which injury? The first one? The second one? Both? The response by Defendant Phillips. The actual dragging on the mat and dumping him in a cell and leaving him there to where he... So the initial injury was not deliberate indifference? That's just unfortunate luck and a seizure and he hits a table? I think if you look at this case in the broader perspective, the response in the broadest perspective possible was willfully inadequate. And the inmates that we deposed in this all said that whenever... They were back there with Mr. Newberry whenever he was having seizures. They said the guards would come and they would look and they would say, you get away and we're not going to respond either. We had three different inmates who testified to that. So this happened over and over and over again. Are they talking about Phillips at that point? Are they talking about Phillips or nurses? Who are they talking about? They're talking about both. They said both wouldn't respond. So that's why we have the two nurses as defendants in this and we also have the people that we could identify as not responding. But I think part of the problem in discovery was that Mr. Newberry is in a seizure so he doesn't know who's not responding and who's not. There was such a blur of the inmates, they couldn't respond. They didn't even know who was responding. This is a traumatic situation. They're looking at Mr. Newberry down there. He's bowed up, he's gasping for air. I think it... Just to use a colloquial term, I think it freaked them out. So they're not getting all the names of the COs and they don't even know a lot of the COs' names. So there might have been more defendants but we couldn't identify them. So I think in the broader perspective of things is that the... Let's just maybe talk about each thing just to get it. So in the mat, the dragging of the mat, that strikes you as deliberate indifference. So I mean he's just had a seizure so I get the first reaction, the first intuition is that's a strange way to move people. But why is that deliberate indifference given the risks? I mean if you put him in something they could fall out of it. You're obviously not going to fall if you're on a mat. I mean you agree they wanted to take him to the observation. That was a good idea. That was a... I think the better response was to call 911. I think the better response was to call an emergency. I think a better response is to stabilize him and call... Emergency personnel should have been called way early on this. Way early on. Because in their operating procedures they're defining seizures, convulsive states, post-convulsive states as all being emergency. It's a deliberate indifference if you have epilepsy and each time you have a seizure you don't call 911? Yes, your honor. So what case says that? Stephan V. Olson, this is a Sixth Circuit case 2012 and I'll just read you the facts real quick. There was a nurse that put a detoxing inmate prone to seizures into a cinder block cell without appropriate medical procedures. I just want to identify this one point because it's a clear point and it would make life easy if it were true. The idea that every time there's a seizure, a prison has a duty to call 911. Your honor... Does the case say that? No, but this medical facility did not have medical staff on staff 24-7. They knew that. There was only a nurse there 8 hours a day Monday through Friday. On the weekends there was only a nurse there 2 hours a day, Saturday and Sunday. They know that there's large gaps in time, there's no medical personnel whatsoever. And so... Is it your point he ought to be hospitalized 24-7 because he can have a seizure at any point? Your honor, if I have a seizure right here on this floor... That's a yes or no answer. It's a yes. So he should never have been put in a cell, he should have been put in a hospital. He should have been... Did he want to be in the hospital the whole time? Yeah, I think the record reflects that. He was asking to be transferred out to a different medical facility. No, no, no, but to be in a hospital the whole time as opposed to some form of jail. I think he wanted treatment for his seizures that were increasing in intensity, duration and frequency. Especially during September, October, November of 2013 and that's the exact time frame that he filed a grievance form, October 27, 2013, which Sheriff Melton signed and he's talking about inadequate non-treatment, he's not even getting ibuprofen and ice, but he's also talking about the delay in care. He's grieving, he's saying, hey, I shouldn't have to wait two days after I have a seizure to get medical treatment. Everything's there as far as the exhaustive remedies and so forth. But to your point, your honor, at what point do you call 9-1-1? That's a good question. Their nurse said 10 minutes. So we have evidence of his having a seizure for 10 minutes, 20 minutes and so forth, cluster seizures. I think in their brief, they even called them grand mal seizures. So at what point do you call 9-1-1? Certainly when someone's having a seizure for 20 minutes, if I have a seizure right here, everyone's going to pick up the phone and make a phone call. If you know I have epilepsy, you're still going to make that phone call. It's just a reasonable thing to do and I'd go beyond that and say it's a decent thing to do. Help me out, counsel, when he injured himself, hurt his eye, were there any guards present when he was in a seizure that hurt his eye? I think, I remember this and counsel's going to probably correct me if I'm wrong, he was in a cell up closer to the guard station and I think they were supposed to be keeping an eye on him, but when he woke up, he was face down in a drain. So the answer to your question is no, your honor. No one was present in that cell with him. I think there might have been someone right outside, I don't know who that person was or persons. You don't know who they are? No, your honor, I do not. But when you say drain, I mean, am I getting this right? This is a floor that just has a drain in the floor, so it's, I mean he would have hurt his eye whether he'd hit the drain or the floor, I mean the floor's hard, it was going to be a problem either way. So the drain, I'm not, I'm trying to figure out if the drain has anything to do with it, it's just he hit the floor. Well, I think it's just a factual. I think it's just a fact, that's where he was, you know, he could have said he, I mean that's what he remembers happening, and that's why I'm sort of repeating it to this court. So your honor, if I could get back to the issue of subject matter jurisdiction, because the defendants pointed to K.V. Grayson to get this case up here, and that case was only decided on one thing, and that was whether the ADA applied to inmates in 1996, the answer was no, and it was remanded back. This court has analyzed the framework of Johnson v. Jones, I think the appropriate citation is Reverson v. Torres. Let's say you're right, we send it back, now we have the nurses have summary judgment motions, is that correct? That is correct, your honor, and I've been ordered to respond to that. You represent, well you represent the same fellow against all of them, right? That is correct, your honor. So the plan is we're going to get summary judgment motions there, and if you lose that, you could appeal, potentially, final judgment, and if you win, they could appeal, right? Not my understanding, according to Johnson v. Jones, because it's a fact-based inquiry, it's genuine issues and material fact. No matter what the district court says, they can never appeal when they lose at the trial level? No, your honor, if there's an abstract issue of law, if there's an abstract issue of law, it could certainly come up here. But everything we're talking about today seems fact-based, and that's exactly, again, the exact kind of thing the Supreme Court was warning against, because they don't want these courts, the appellate courts, flooded with this kind of litigation. I will concede, perhaps. Your idea is there's no interlocutory appeal if there's a fact-based dispute? I think the key here is to look and see if it's abstract issues of law. Justice Scalia said, I think it was in the Barron's case, B-E-H-R-R-E-N-S, he said the usual way for this to come up to this level is if a constitutional right has been clearly established, that's an appeal, that's an abstract issue of law. And so I can't go through that, I'm prepared to. One clearly established question here is, where does it say, with someone who's an epileptic that has a seizure, that you always call 9-1-1? Why isn't that the issue of law we're looking for, it's abstract, law, if it's every single word you used? I think it would be very difficult to find a law such as that. I think under the circumstances of this case, when there's not 24-7 medical coverage, when it appears to the inmates, and maybe perhaps an observation years later that Mr. Newberry was not being treated for seizures, he was given medication, as your court pointed out, but it's the whole, if I'm giving aspirin for an appendicitis kind of issue. Counsel, do you have any case involving a prisoner with epilepsy where a court held that it violated the Constitution in the way that the prisoner was treated? Yes, Your Honor. The Supreme, I'm sorry, the Sixth Circuit Court, Stephan, S-T-E-F-A-N-V-Olson, 497-F-A-P-P-X-568. The pen site is 580, 5-8-0. So it's an unpublished decision? Correct. Does that work for clearly established law? It would help, hopefully be persuasive, some of your peers found as such, that's as close as I can come. I think we're in this area of law, the way this court's supposed to work is this court's supposed to look to the Supreme Court, and then to its own court, and then to its sister's courts. What about other circuits? Well, I will tell you that the Seventh Circuit, in analyzing the objective prong of the analysis is where a seizure, whether it's not supposed to be evidence of serious medical need. The Seventh Circuit held that a medical condition much less serious than seizures has satisfied the standard. That's the standard of the objective prong. And that's King v. Kramer, 680 Federal 3rd, 1013, and the pen site is 1018. So maybe not quite under the constitutional framework, but I think we can get there, though. I mean, I think Mr. Newberry can get there by saying that clearly he, the Eighth Amendment has, clearly Mr. Newberry had a constitutional right to medical care while incarcerated, and this court has said that since 1972, and that was the Rich V. City of Mayfield Heights case. And then their own operating procedures say that seizures, convulsive states, post-convulsive states are medical emergencies. And it goes on to say, those same operating procedures go on to say that, that requires first aid, at a minimum, first aid and removal of the cell. A lot of times, Mr. Newberry didn't even get that. And then I think, so you put those two things together, I think it's self-evident that Mr. Newberry was entitled constitutionally to treatment for seizures. And then if you also look at the Stefan v. Olsen case, that is a case that I just cited to you that the nurse there was found, the inmate was found to have a constitutional right to, it was clearly established. And then, do I have 30, 29 seconds, okay, is there any other questions I can answer at this point? No, that's always a good thing to say, but I don't think so, I think we get what you're trying to say. Thank you, Your Honor. I appreciate it. All right, thanks very much. Your Honors, when you look at the record in this case, Mr. Newberry's testimony has been that at his worst, he was having three to four seizures a week. Somewhere around his best, you know, he says about a seizure per week. But when you look at the course of treatment and the medical records in this case, there's only 17 or 18 documented seizures, either they were documented by medical staff or documented by the corrections officers, and that's over a 15-month period. Clearly there were seizures that Mr. Newberry was having that he never reported, and that may have happened, or they may never have happened. But what we know is that in the circumstances- For our purposes, it happened. For our purposes, it happened, correct, Your Honor. But- I suppose you could say they happened and the prison didn't, for whatever reason, neglected to see that it happened. And the problem for the plaintiff, though, in this case, is that he has to specifically establish that these three defendants had the requisite knowledge to establish deliberate indifference. There's no- He talked about 20-minute seizures. There's no evidence that any of these defendants were involved in any 20-minute seizures with Mr. Newberry. If there was a corrections officer who saw a 20-minute seizure and the nurse was not called and there was no action taken, perhaps that would be deliberate indifference, but that's not what we're here on today. Today, we're here on whether or not Sheriff Melton obtained the requisite knowledge to know that this man was in distress or was at risk of harm in the facility. And there's only two documents or allegations that go to that point, and neither of them provide any information to the sheriff to establish that kind of liability. With regard to the jail administrator, Shannon Harvey, the plaintiffs pointed to three- that were all over one weekend and were right before he was obtained a visit with a doctor so that he could see, you know, what to do about his seizures. He had a potassium test after that, and there were no seizures for all- He had a seizure a few weeks after that, but then there were no seizures documented for six weeks. As a jail administrator, there wasn't anything that put her on notice that the medical staff was not treating him appropriately or that he was being mistreated by the staff. That's all that's required. If they get the medical assistance, as long as they don't have knowledge that they're being mistreated, then they're not being deliberately indifferent. And in this case, you know, the plaintiff has failed to even meet the subjective component of deliberate indifference. Is everybody assuming with this case that there would be one trial? Assuming there wasn't summary judgment, that there would be one trial with respect to whomever the defendants were that were left? At this point- No, no, no. From the beginning. Wasn't that the assumption? Yes, Your Honor. This was one complaint, one plaintiff, there'd be a trial against whoever was left standing after summary judgment. I mean, the one thing I have to say, this interlocutory appeal, I don't think there's something that prohibits you from filing it, but the reason you file it so you don't have to stay in trial, that was not going to happen until the nurse's summary judgment motions were resolved. So I just- It's beyond me. I realize Nashville has a problem with the vacancies, but I still don't understand it. It just doesn't make sense to me. So I don't want to be a scold, but it's just beyond me how this would have happened. I understand, Your Honor. We have filed it, but that was the choice the defendants made in this case, and I understand that there's some confusion about that, but at this point, we do feel that the defendants are entitled to qualified immunity. I think that they shouldn't have to stand trial in a case when there's no evidence that is in light most favorable to the plaintiff. They still just don't get there. With regard to the objective component, there's no evidence that each seizure required a call to 911. That would be untenable. Mr. Newberry would have to spend his life in a medical facility because when he's outside the facility, he doesn't have medical staff who observe him constantly. He's had seizures throughout his life. He's had multiple injuries, some of them pretty severe, but he's admitted that he doesn't go to the doctor every time he has a seizure. There's no evidence in the record that suggests that that's a requirement, and without verifying medical evidence to establish that Mr. Newberry should have been seen for this pump knot on his eye, or whether he was entitled to anything more than the treatment he got, there's just nothing in the record to suggest that. We would submit that Sergeant Phillips acted objectively reasonable. He provided an extra mat to make sure he didn't hit his head. He had him observed, and he did everything in his power to make sure that this man was safe and seen by the nurse. So unless you have any further questions... I don't think so. Thank you. Thank you for your time. I appreciate your briefs and argument. The case will be submitted, and the clerk may call the last case.